**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

In re:

JOSEPH GERALD CESARIO and        Case No. 3:13-bk-04806-JAF
REGINA ANNE CESARIO

                                      Chapter 11

        Debtor.

_____/


**CHAPTER 11 PLAN OF LIQUIDATION FILED BY**
**SECURED CREDITOR, RREF II ACB ACQUISITIONS, LLC**


September 18, 2014

                     Respectfully Submitted,

                     JONES WALKER LLP
                     *Attorneys for RREF II ACB Acquisitions, LLC*
                     201 Biscayne Blvd., Suite 2600
                     Miami, Florida 33131
                     Email: *sdrobny@joneswalker.com*
                     Email: *mroher@joneswalker.com*
                     Telephone: (305) 679-5700
                     Facsimile: (305) 679-5710


                     By:    */s/ Mark S. Roher*
                               Stephen P. Drobny
                               Florida Bar No. 55732
                               Mark S. Roher
                               Florida Bar No. 178098

# TABLE OF CONTENTS

ARTICLE I.        DEFINITIONS.................................................................................... 1

ARTICLE II.       CLASSIFICATION OF CLAIMS AND DEBTORS' INTERESTS............... 6

ARTICLE III.      TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS ..................... 6

ARTICLE IV.       TREATMENT OF CLASSES OF CLAIMS.................................................. 6

ARTICLE V.        ESTABLISHMENT OF PLAN TRUST ....................................................... 12

ARTICLE VI.       MEANS FOR EXECUTION OF THE PLAN................................................ 15

ARTICLE VII.      CONFIRMATION ORDER AND VESTING OF PROPERTY .................... 16

ARTICLE VIII.     PROCEDURES FOR RESOLVING DISPUTED CLAIMS.......................... 17

ARTICLE IX.       CONDITIONS PRECEDENT TO EFFECTIVENESS OF PLAN ............... 18

ARTICLE X.        RETENTION OF JURISDICTION................................................................ 19

ARTICLE XI.       EXECUTORY CONTRACTS AND UNEXPIRED LEASES ...................... 20

ARTICLE XII.      LITIGATION CLAIMS.................................................................................. 20

ARTICLE XIII.     ACCEPTANCE OR REJECTION OF THE PLAN ....................................... 21

ARTICLE XIV.      DISCHARGE, INJUNCTION AND LIMITS ON LIABILITY ................... 21

ARTICLE XV.       MISCELLANEOUS PROVISIONS.............................................................. 23

ARTICLE XVI.      PROVISION TO INVOKE CRAMDOWN IF NECESSARY ...................... 25

ARTICLE XVII.     TAX CONSEQUENCES................................................................................ 25

ARTICLE XVIII.    REQUEST FOR CONFIRMATION .............................................................. 25

EXHIBIT A – PROPOSED AUCTION AND BIDDING PROCEDURES
*(to be filed and served on all creditors by RREF no later than fourteen (14) days prior to the initial date set by the Court to consider confirmation of this Plan).*

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

In re:

JOSEPH GERALD CESARIO and       Case No. 3:13-bk-04806-JAF
REGINA ANNE CESARIO

           Chapter 11

      Debtor.

_____/

## CHAPTER 11 PLAN OF LIQUIDATION

This Chapter 11 Plan (the "Plan") is proposed, pursuant to Section 1121(c) of the United States Bankruptcy Code, by secured creditor, RREF II ACB Acquisitions, LLC ("RREF" or "Proponent").

## ARTICLE I

## DEFINITIONS

Unless the context otherwise requires, for the purposes of this Plan, the following terms shall have the meanings set forth below, except as expressly provided otherwise. Capitalized terms used in the Plan, but not defined below, shall have the meanings ascribed to them in the Bankruptcy Code.

1.1     **Administrative Expense Claim**: Any cost or expense of administration of the Bankruptcy Case allowed under Section 503(b) of the Code, including, without limitation, any actual and necessary costs and expenses of preserving the Debtors' estate, including any compensation or reimbursement of expenses to the extent allowed by the Court under Sections 330 and 331 of the Code and any fees or charges required to be paid under 28 U.S.C. § 1930 and § 586.

1.2     **Actions:** Any and all Avoidance Actions, as well as all other claims and causes of action, if any, owned by the Debtors and Debtors-in-Possession.

1.3     **Allowed Claim**: Any Claim (a) with respect to which a timely proof of claim has been filed with the Court on or before the date fixed by the Court; or (b) that is listed in a schedule and a list of creditors prepared and filed with the Court pursuant to Rule 1007 and not listed as disputed, contingent or unliquidated as to amount; and, in either case, as to which no objection to the allowance thereof has been interposed within any applicable period of limitation fixed by an Order of the Court or the Plan, or which is no longer subject to appeal, or (c) which has otherwise been allowed by, or pursuant to, Order of the Court which is no longer subject to appeal.

1.4  **Assets**:  The real property located at (i) 424 Porpoise Point, St. Augustine, FL 32084 (the "St. Augustine Property"), (ii) 9141 Hall Drive, Lenexa, KS 66219 (the "Kansas Property"); together with (iii) 2,500 shares of Regions Financial stock (the "Regions Stock"); (iv) 28,800 shares of GE stock (the "GE Stock," with the Regions Stock the "Stock"); (v) the Fidelity IRA (Account Ending in 1831) (the "IRA"); (vi) Debtors' interest in Sibco Enterprises Inc. (which owns Units 5010, 5020 and 5030 at 1233 S. Atlantic Ave., Daytona Beach, FL 32118) (the "Sibco Interest"); (vii) all funds held in the Debtors' DIP bank accounts; and (viii) any other scheduled non-exempt assets of the Debtors, excluding the Avoidance Actions.  The Assets shall exclude the proceeds of Avoidance Actions.

1.5  **Avoidance Actions**:  Any and all claims and causes of action for avoidance, damages or other relief arising under Sections 105, 502(d), 510, 542, 543, 544, 545, 546, 547, 548, 549, 550, 551, 552 and/or 553 of the Bankruptcy Code or arising under the Florida Uniform Fraudulent Transfer Act or other applicable state law.

1.6  **Ballot**:  The form(s) distributed to each Creditor holding an Allowed Claim in an impaired Class, on which is to be indicated the acceptance or rejection of the Plan.

1.7  **Bankruptcy Case**:  This Chapter 11 bankruptcy case of Debtors Joseph Gerald Cesario and Regina Anne Cesario, Case No. 3:13-bk-04806-JAF, in the United States Bankruptcy Court for the Middle District of Florida.

1.8  **Bankruptcy Rules**:  The Federal Rules of Bankruptcy Procedure, pursuant to 28 U.S.C. § 2075 and the Local Rules of the United States Bankruptcy Court for the Middle District of Florida, as amended.

1.9  **Chase:**  Means JP Morgan Chase Bank, N.A., a secured creditor of the Debtors and mortgagee on the Kansas Property.

1.10  **Class**:  A group of Claims which are substantially similar to each other, as classified pursuant to the Plan.

1.11  **Claims Bar Date**:  December 10, 2013.

1.12  **Closing Date:**  The date which is no more than five (5) business days following the date on which each of the Sale Orders are entered and no earlier than one (1) business day after the Confirmation Order becomes final and non-appealable.

1.13  **Code**:  The United States Bankruptcy Code, Title 11 of the United States Code, as enacted in 1978 and thereafter amended.

1.14  **Confirmation Date**:  The date upon which the Order is entered by the Court confirming the Plan, after a hearing is conducted pursuant to Section 1129 of the Code.

1.15  **Confirmation Order**:  The Order of the Court confirming the Plan, as such order may be amended, modified or supplemented.

1.16 __Court__: The United States Bankruptcy Court for the Middle District of Florida and, with respect to any particular proceeding within the Bankruptcy Case, any other court which may be exercising jurisdiction over such proceeding.

1.17 __Debtors__: Joseph Gerald Cesario and Regina Anne Cesario, Debtors and Debtors-in-Possession in this Chapter 11 Bankruptcy Case.

1.18 __Disclosure Statement__: The disclosure statement relating to the Plan, including, without limitation, all exhibits and schedules thereto, as approved by the Bankruptcy Court pursuant to Section 1125 of the Code, as may be amended from time to time.

1.19 __DIP Accounts__: All of the Debtors' accounts at any financial institution, including without limitation, any debtor-in-possession or escrow accounts.

1.20 __Disputed Claim__: Any claim (i) which is scheduled by the Debtors as disputed, contingent or unliquidated or (ii) proof of which has been filed with the Court and an objection to the allowance thereof, in whole or in part has been or is interposed prior to the final date, if any, provided under the Plan for the filing of such objections (or thereafter pursuant to an Order of the Court) and which objection has not (A) been determined by a Final Order or (B) been settled by the parties under a settlement approved by Final Order of the Court pursuant to Bankruptcy Rule 9019; or (iii) which has not been otherwise allowed by the Court.

1.21 __Distribution(s)__: Cash or property to be distributed to the holders of Allowed Claims under the Plan.

1.22 __Effective Date__: The later of: ten business days after the Closing Date for the St. Augustine Property Sale or, in the event the Plan Trustee elects to proceed with the Kansas Property Sale (as defined below), ten business days after the Closing Date for the Kansas Property Sale.

1.23 __Estate__: The estate created in the Chapter 11 Bankruptcy Case pursuant to Section 541 of the Bankruptcy Code.

1.24 __Final Distribution__: The Distribution made on the Final Distribution Date.

1.25 __Final Distribution Date__: The date as soon as practicable after the last to occur of (a) the date that the last Claim or Equity Interest becomes an Allowed Claim or Allowed Equity Interest; or (b) the date upon which all Estate Assets have been liquidated and converted to cash.

1.26 __Final Order__: A judgment, order, ruling or other decree issued and entered by the Court or by any state or other federal court or other tribunal of competent jurisdiction located in one of the states, territories or possessions of the United States or the District of Columbia, which judgment, order or other decree (i) has not been reversed, stayed or modified; and (ii) one day more than the requisite number of days (under applicable law or procedure) shall have elapsed from the date such judgment, order, ruling or other decree is docketed on the docket of this Bankruptcy Case or such other case in which such judgment, order, ruling or other decree is entered, and reversal, stay or modification shall not have been sought or obtained.

1.27 **General Unsecured Claim**: Any claim against the Debtors which is not an Administrative Expense Claim, Priority Claim, Secured Claim, Priority or Tax Claim.

1.28 **Holder**: Means an entity holding a claim or any authorized agent who has completed, executed and delivered a Ballot in accordance with the applicable voting instructions.

1.29 **Kansas Property Sale**: The Kansas Property Sale shall only occur if the proceeds from the St. Augustine Property Sale are insufficient to pay all Allowed Claims in full plus interest, along with all fees and costs of the Plan Trustee and any professional retained by the Plan Trustee as of the Closing Date for the St. Augustine Property Sale. In the event that the Kansas Property Sale occurs, it shall mean either:

(a) the sale of the Kansas Property to a third party purchaser by way of a purchase contract with the Plan Trustee and approved by the Bankruptcy Court <u>or</u> Chase's acquisition of the Kansas Property by way of its exercise of its first right of refusal to acquire the Kansas Property after a third party's execution of purchase contract with the Plan Trustee approved by the Bankruptcy Court; or

(b) the sale of the Kansas Property by way of auction to a third party in accordance the Bidding Procedures attached as Exhibit "A" hereto; <u>or</u> Chase's or RREF's acquisition of the Kansas Property by way of their exercise of their respective rights to credit bid in connection with the Plan Trustee's auction sale to a third party in accordance the Bidding Procedures attached as Exhibit "A" hereto.

1.30 **Kansas Property Sale Order**: The Order, to be entered by the Court, approving the St. Augustine Property Sale as defined herein.

1.31 **Order**: A determination, ruling or judgment made by the Court.

1.32 **Petition Date**: August 6, 2013.

1.33 **Plan**: This Chapter 11 Plan, as it may be amended, supplemented or otherwise modified from time to time in accordance with the provisions of the Code, and any exhibits and schedules annexed hereto, in its present form or as it may be modified, amended or supplemented from time to time.

1.34 **Plan Trustee**: _____, who shall be selected by RREF and will be disclosed by way of a separate "Notice of Selection of Plan Trustee" to be filed and served on all creditors by RREF no later than fourteen (14) days prior to the initial date set by the Court to consider confirmation of this Plan.

1.35 **Plan Trustee Turnover Date**: As defined in Section 5.1 below.

1.36 **Post-Confirmation**: The period commencing on the Confirmation Date and continuing thereafter until this Bankruptcy Case is closed by Order of the Court.

1.37 **Post-Petition**: The period commencing on the Petition Date and continuing thereafter until the Confirmation Date.

1.38   **Pre-Petition**:  The period of time preceding the Petition Date and concluding on the Petition Date.

1.39   **Priority Claim**:  A Claim that is entitled to priority under Section 507(a) of the Code, other than an Administrative Expense Claim or a Priority Tax Claim.

1.40   **Priority Tax Claim**:  A Claim that is entitled to priority under Section 507(a)(8) of the Code.

1.41   ***Pro Rata***:  With respect to an Allowed Claim in a given class, that same proportion that such Allowed Claim bears to the aggregate of all Allowed Claims in such class.

1.42   **Sale Orders:**  Collectively, the St. Augustine Property Sale Order and the Kansas Property Sale Order.

1.43   **Sales:**  The St. Augustine Property Sale and the Kansas Property Sale.

1.44   **Secured Claim**:  (i) Any Claim arising on or before the Petition Date that is secured by a valid lien on the property of the Debtors which is not void or avoidable under any state or federal law, including any provision of the Code, or an Allowed Claim for which the holder asserts a right to setoff under Section 553 of the Code to the extent of the value which is either agreed to by the Debtors pursuant to the Plan or, in the absence of an agreement, has been determined in accordance with Sections 506(a) or (b) of the Code to be the interest of the holder of such Allowed Claim in the Debtors' property, or (ii) an Allowed Claim that the Debtors have agreed to treat as an Allowed Secured Claim pursuant to the Plan.  That portion of such Allowed Claim exceeding the value of the security held therefore shall be an Allowed General Unsecured Claim, except as otherwise provided by the Plan.

1.45   **Schedules**:  The schedules of assets and liabilities filed with the Court by the Debtors in accordance with Bankruptcy Rule 1007, as amended or supplemented in accordance with the Code or an Order of the Court.

1.46   **St. Augustine Property Sale:**  Either:

(a) the sale of the St. Augustine Property to a third party purchaser by way of a purchase contract with the Plan Trustee and approved by the Bankruptcy Court <u>or</u> RREF's acquisition of the St. Augustine Property by way of its exercise of its first right of refusal to acquire the St. Augustine Property after a third party's execution of purchase contract with the Plan Trustee approved by the Bankruptcy Court; or

(b) the sale of the St. Augustine Property by way of auction to a third party in accordance the Bidding Procedures attached as Exhibit "A" hereto; <u>or</u> RREF's acquisition of the St. Augustine Property by way of its exercise of its right to credit bid in connection with the Plan Trustee's auction sale in accordance the Bidding Procedures attached as Exhibit "A" hereto.

1.47   **St. Augustine Property Sale Order:**   The Order, to be entered by the Court, approving the St. Augustine Property Sale as defined herein.

1.48   **Subordinated Claim**:   Any claim of a Creditor against the Debtors whose Claim is equitably or statutorily subordinated by the Court, under Section 510 of the Code or otherwise.

1.49   **Successful Bidder:**   The bidder determined by the Court to have made the highest and best bid for the St. Augustine Property and Kansas Property at the Sales which may include RREF and Chase through their exercise of their rights under Code Section 363(k).

1.50   **Tax Claim**:   Any Claim of a domestic federal, state or local governmental unit for unpaid taxes.

1.51   **Unclaimed Property**:   Any undistributed cash, or any other property of the Debtors unclaimed ninety (90) days after the Final Distribution Date.

1.52   **United States Trustee**:   Has the same meaning ascribed to it in 28 U.S.C. § 581, *et seq.* and, as used in the Plan, refers to the Office of the United States Trustee for the Middle District of Florida.

1.53   **Vacant Lots.**   The 2 lots of vacant real property located at 110 and 113 Heath Cliff Drive Southeast, Poplar Grove, Illinois 61605.

## ARTICLE II

## CLASSIFICATION OF CLAIMS AND DEBTORS' INTERESTS

The holders of all Claims against the Debtors, and of all interests in the Debtors, whether resulting in an Allowed Claim or not, shall be bound by the provisions of the Plan and are hereby classified as follows:

Class 1 – Priority Tax Claims

Class 2 – Secured Claim of RREF

Class 3 – Secured Claim of Chase

Class 4 – Secured Claim of St. Johns County Tax Collector

Class 5 – General Unsecured Claims

Class 6 – Interests of Debtors

## ARTICLE III

## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS

3.1 **Administrative Expense Claims**. Each holder of an Allowed Administrative Expense Claim shall be paid by the Plan Trustee on the Effective Date or, if later, the date on which such Allowed Administrative Expense Claim has become due and payable pursuant to the terms thereof, the agreement upon which such Allowed Administrative Expense Claim is based, or any applicable Final Order of the Court.

3.2 All quarterly fees that are due to the United States Trustee as of the Effective Date shall be paid on the Effective Date.

Administrative Expense Claims are not impaired.

## ARTICLE IV

## TREATMENT OF CLASSES OF CLAIMS

Holders of Claims in Classes 1 and 6 of the Plan are not impaired under the Plan.

**Allowed Priority Claims**.

**Class 1.  Allowed Priority Tax Claims.**  Class 1 Allowed Priority Tax Claims shall be paid in full by the Plan Trustee on the Effective Date unless the holder of any such Allowed Priority Claim agrees to other treatment.

Holders of Class 1 Claims are not impaired.

4.1 **Class 2.  Allowed Secured Claim of  RREF.**  RREF shall have an Allowed Secured Claim in the amount of $1,353,816.56, plus any amounts allowed by the Court pursuant to Code Section 506(b) and such determination must be made prior to the Effective Date, and less the net proceeds received by RREF from its liquidation of the Stock as permitted by the Court's order entered on September 12, 2014 (Doc. 55).

4.2 No later than three (3) business days after the Confirmation Order becomes final and non-appealable Debtors shall liquidate the IRA and immediately turn over the net proceeds from such liquidation to RREF in partial satisfaction of the Allowed Secured Claim of RREF.

4.3 St. Augustine Property:

(a) In the event the Plan Trustee is able to procure an acceptable buyer for the St. Augustine Property who signs a contract for the purchase of the St. Augustine Property and provides a deposit in an amount deemed reasonable by the Plan Trustee, RREF shall have the first right of refusal to acquire the St. Augustine Property at the price contained in the third party contract and may credit up to $1,353,816.56 *plus* any amounts allowed by the Court pursuant to Code Section 506(b), *less* the net proceeds received by RREF from its liquidation of the Stock and the funds turned over from the liquidation of the IRA.  RREF's first right of refusal to

acquire the St. Augustine Property must be exercised by RREF within ten business days of the Plan Trustee's transmittal to RREF of a signed contract to purchase the St. Augustine Property from a third party purchaser.

In the event the Plan Trustee does not procure a buyer for the St. Augustine Property within 120 days after the Plan Trustee Turnover Date, the St. Augustine Property shall be auctioned by the Plan Trustee with such auction taking place no later than 180 days after the Plan Trustee Turnover Date. At such auction, RREF shall have the right to, at its sole discretion, credit bid for the St. Augustine Property in an amount up to $1,353,816.56 *plus* any amounts allowed by the Court pursuant to Code Section 506(b), *less* the net proceeds received by RREF from its liquidation of the Stock and the funds turned over from the Debtors' liquidation of the IRA.

(b)      If the Bankruptcy Court approves the Plan Trustee's sale of the St. Augustine Property to a third party either by purchase contract or auction, RREF shall receive on the Closing Date, after the Plan Trustee's payment of the Allowed Secured Claim of the St. Johns County Tax Collector or any usual and customary closing costs, including commissions for any real estate broker or auctioneer retained by the Plan Trustee or the buyer of the St. Augustine Property, all remaining proceeds from the St. Augustine Property Sale which would be necessary to satisfy any remaining unpaid portion of the Allowed Secured Claim of RREF.

(c)      If the Bankruptcy Court approves the sale of the St. Augustine Property to RREF either through its exercise of its first right of refusal or credit bid at auction, the Plan Trustee shall execute a deed in lieu transferring the St. Augustine Property to RREF to be held by the Plan Trustee in escrow and to be turned over to RREF upon RREF's satisfaction of the Allowed Secured Claim of the St. Johns County Tax Collector or any usual and customary closing costs, including commissions for any real estate broker or auctioneer retained by the Plan Trustee. Upon satisfaction of these conditions, the Allowed Secured Claim of RREF shall be *increased* for any amounts paid by it to satisfy the Allowed Secured Claim of the St. Johns County Tax Collector or any usual and customary closing costs, including commissions for any real estate broker or auctioneer retained by the Plan Trustee *and decreased* by the bid price of the St. Augustine Property submitted by RREF and approved by the Bankruptcy Court. To the extent RREF exercises its first right of refusal or its credit bid at auction exceeds the amount of its Allowed Secured Claim, including the payment of any expenses set forth in the preceding sentence, then RREF shall remit to the Plan Trustee the differential on the Closing Date.

(d)      **BECAUSE THE ST. AUGUSTINE PROPERTY SALE SHALL BE UNDER THIS PLAN, NO TRANSFER TAXES SHALL BE CHARGED BY ANY APPLICABLE TAXING AUTHORITY, INCLUDING BUT NOT LIMITED TO, THE ST. JOHNS COUNTY, FLORIDA TAX COLLECTOR IN ACCORDANCE WITH 11 U.S.C. § 1146(a).**

4.4      Kansas Property

(a)      In the event the Plan Trustee elects to go forward with the sale of the Kansas Property and is able to procure an acceptable buyer for the Kansas Property who signs a contract for the purchase of the Kansas Property and provides a deposit in an amount deemed

reasonable by the Plan Trustee, RREF shall have the second right of refusal to acquire the Kansas Property at: (a) in the event Chase does not exercise its first right of refusal, the price contained in the third party contract or (b) in the event Chase exercises its first right of refusal, the price contained in the contract submitted by Chase.  In connection with such right, RREF may credit up to $1,353,816.56 *plus* any amounts allowed by the Court pursuant to Code Section 506(b) and payment of any expenses by RREF in connection with the sale of the St. Augustine Property to RREF *less* the net proceeds received by RREF from its liquidation of the Stock and the funds turned over from the Debtors' liquidation of the IRA and the consideration received by RREF from the St. Augustine Property Sale.  For purposes of determining the consideration received by RREF with respect to the St. Augustine Property Sale, it shall be: (1) if RREF acquires the St. Augustine Property either by exercising its right of first refusal or credit bid at any auction, the  amount of RREF's successful offer or bid and (2) if a third-party acquires the St. Augustine Property either by purchase contract or bid at any auction, the net proceeds received by RREF from such sale.  RREF's second right of refusal to acquire the Kansas Property must be exercised by RREF within twenty business days of the Plan Trustee's transmittal to RREF of a signed contract to purchase the Kansas Property.

(b)    In the event the Plan Trustee does not procure a buyer for the Kansas Property within 120 days after the Closing Date of the St. Augustine Property, the Kansas Property shall be auctioned by the Plan Trustee with such auction taking place no later than 180 days after Closing Date of the St. Augustine Property.  At such auction, RREF shall have the right to, at its sole discretion, credit bid for the Kansas Property in the amount of $1,353,816.56 *plus* any amounts allowed by the Court pursuant to Code Section 506(b) and payment of any expenses by RREF in connection with the sale of the St. Augustine Property to RREF *less* the net proceeds received by RREF from its liquidation of the Stock and the funds turned over from the liquidation of the IRA and the consideration received by RREF from the St. Augustine Property Sale.  For purposes of determining the consideration received by RREF with respect to the St. Augustine Property Sale, it shall be: (1) if RREF acquires the St. Augustine Property either by exercising its right of first refusal or credit bid at any auction, the  amount of RREF's successful offer or bid and (2) if a third-party acquires the St. Augustine Property either by purchase contract or bid at any auction, the net proceeds received by RREF from such sale.

(c)    If the Bankruptcy Court approves the Plan Trustee's sale of the Kansas Property to a third-party or Chase either by purchase contract or auction, RREF shall receive on the Closing Date for the Kansas Property Sale, after the Plan Trustee's payment of any unsatisfied portion of the Allowed Secured Claim of Chase and any outstanding real property taxes on the Kansas Property and any usual and customary closing costs, including commissions for any real estate broker retained by the Plan Trustee or the buyer of the Kansas Property, all of the remaining proceeds from the Kansas Property Sale which would be necessary to satisfy any remaining unpaid portion of the Allowed Secured Claim of RREF at the time of the Closing Date for the Kansas Property Sale.

(d)    If the Bankruptcy Court approves the sale of the Kansas Property to RREF either through its exercise of its second right of refusal or credit bid at auction, the Plan Trustee shall execute a deed in lieu transferring the Kansas Property to RREF to be held by the Plan Trustee in escrow and to be turned over to RREF upon RREF's satisfaction of the Allowed Secured Claim

of Chase, any outstanding real property taxes on the Kansas Property and any usual and customary closing costs, including commissions for any real estate broker retained by the Plan Trustee. Upon satisfaction of these conditions, the Allowed Secured Claim of RREF shall be *increased* for any amounts paid by it to satisfy the Allowed Secured Claim of Chase, any outstanding real property taxes on the Kansas Property and any usual and customary closing costs, including commissions for any real estate broker retained by the Plan Trustee *and decreased* by the bid price of the Kansas Property submitted by RREF and approved by the Bankruptcy Court. To the extent RREF exercises its second right of refusal or its credit bid at auction exceeds the remaining amount of its Allowed Secured Claim, including the payment of any expenses set forth in the preceding sentence, then RREF shall remit to the Plan Trustee the differential on the Closing Date.

(e)     **BECAUSE THE KANSAS PROPERTY SALE SHALL BE UNDER THIS PLAN, NO TRANSFER TAXES SHALL BE CHARGED BY ANY APPLICABLE TAXING AUTHORITY, INCLUDING BUT NOT LIMITED TO, THE JOHNSON COUNTY, KANSAS TAX COLLECTOR IN ACCORDANCE WITH 11 U.S.C. § 1146(a).**

4.5     If after the Closing Date for the Kansas Property Sale, there remains any unpaid portion of the Allowed Secured Claim of RREF, such unpaid portion shall automatically be deemed to constitute an Allowed General Unsecured Claim for RREF without further order from the Bankruptcy Court.

The Holder of the Class 2 Claim is not impaired.

4.6     **Class 3.   Allowed Secured Claim of Chase**.   Chase shall have an allowed secured claim in the amount of $55,218.16, plus any amounts allowed by the Court pursuant to Code Section 506(b) and such determination must be made prior to the Effective Date.

4.7     Kansas Property

(a)     In the event the Plan Trustee elects to go forward with the sale of the Kansas Property and is able to procure an acceptable buyer for the Kansas Property who signs a contract for the purchase for the purchase of the Kansas Property and provides a deposit in an amount deemed reasonable by the Plan Trustee, Chase shall have the first right of refusal to purchase the Kansas Property at the price contained in the third party contact and may credit up to $55,218.16, *plus* any amounts allowed by the Court pursuant to Code Section 506(b) towards the purchase price. Chase's first right of refusal to acquire the Kansas Property must be exercised by Chase within ten business days of the Plan Trustee's transmittal to Chase of a signed contract to purchase the Kansas Property from a third party purchaser.

(b)     In the event the Plan Trustee does not procure a buyer for the Kansas Property within 120 days after the Closing Date of the St. Augustine Property, the Kansas Property shall be auctioned by the Plan Trustee with such auction taking place no later than 180 days after Closing Date of the St. Augustine Property. At the Kansas Property Sale, Chase shall have the right to, at its sole discretion, make a credit bid for the Kansas Property in an amount up to $52,218.16, *plus* any amounts allowed by the Court pursuant to Code Section 506(b).

(c)     If the Bankruptcy Court approves the Plan Trustee's sale of the Kansas Property to a third party or RREF either by purchase contract or auction, Chase shall receive on the Closing Date, after the Plan Trustee's payment of any outstanding real property taxes on the Kansas Property and any usual and customary closing costs, including commissions for any real estate broker or auctioneer retained by the Plan Trustee or the buyer of the Kansas Property, all remaining proceeds from the Kansas Property Sale which would be necessary to satisfy any remaining unpaid portion of the Allowed Secured Claim of Chase.

(d)     If the Bankruptcy Court approves the sale of the Kansas Property to Chase either through its exercise of its first right of refusal or credit bid at auction, the Plan Trustee shall execute a deed in lieu transferring the Kansas Property to Chase to be held by the Plan Trustee in escrow and to be turned over to Chase upon Chase's satisfaction of any outstanding real property taxes on the Kansas Property and any usual and customary closing costs, including commissions for any real estate broker or auctioneer retained by the Plan Trustee.  Upon satisfaction of the foregoing conditions, the Allowed Secured Claim of Chase shall be *increased* for any amounts paid by it to satisfy any outstanding real property taxes on the Kansas Property or any usual and customary closing costs, including commissions for any real estate broker or auctioneer retained by the Plan Trustee *and decreased* by the bid price of the Kansas Property submitted by Chase and approved by the Bankruptcy Court.  To the extent Chase exercises its first right of refusal or its credit bid at auction exceeds the amount of its Allowed Secured Claim, including the payment of any expenses set forth in the preceding sentence, then Chase shall remit to the Plan Trustee the differential on the Closing Date.

(e)     If after the Closing Date of the Kansas Property Sale, there remains any unpaid portion of the Allowed Secured Claim of Chase, such unpaid portion shall automatically be deemed to be an Allowed General Unsecured Claim without further order of the Bankruptcy Court.

The Holder of the Class 3 Claim is not impaired.

4.8     **Class 4.   Allowed Secured Claim of St. Johns County Tax Collector.**  The Allowed Secured Claim of the St. Johns County Tax Collector in the amount of $18,345.06 [Claim 7-1] shall be satisfied at the closing on the sale of the St. Augustine Property.

The Holder of the Class 4 Claim is not impaired.

4.9     **Class 5.   Allowed General Unsecured Claims.**  Class 5 consists of all Allowed General Unsecured Claims totaling $29,765.95 (not including any general unsecured claims of RREF or Chase arising from any deficiency subsequent to the closings on the St. Augustine Property Sale and the Kansas Property Sale).  It is reasonably anticipated that the Sales will produce sufficient funds to satisfy all holders of Allowed General Unsecured Claims in full plus post-petition interest.

4.10    In the event that the Sales do not produce sufficient funds to satisfy all holders of Allowed General Unsecured Claims in full, plus post-petition interest through the date the Plan Trustee issues disbursement checks, the Plan Trustee may liquidate any of the remaining Assets

and prosecute the Actions in the manner he or she sees fit in order to make distributions to satisfy all holders of Allowed General Unsecured Claims in full, plus post-petition.

4.11    In the event that the net proceeds from the Plan Trustee's liquidation of all of the Assets and prosecution of the Avoidance Actions are insufficient to satisfy all holders of Allowed General Unsecured Claims in full, plus post-petition interest, RREF agrees that it will provide funding up to the $29,765.95, plus post-petition interest through the date upon which the Plan Trustee issues checks for final distributions to any holder of a General Secured Claim that is an Allowed Claim in order to satisfy all such claims in full.

Holders of Class 5 Claims are not impaired.

4.12    **Class 6.  Interests of Debtors.**    After payment of all of the Administrative Expenses and Classes 1 through 5 in full, including post-petition interest along with any and all fees and expenses of the Plan Trust (including professional fees and costs of the Plan Trustee), any of the remaining Assets that have not been liquidated by the Plan Trustee as well as any remaining funds in the Plan Trust Account shall revert to the Debtors and automatically be deemed to constitute property of the Debtors.

Class 6 Interests are not impaired.

## ARTICLE V

## ESTABLISHMENT OF PLAN TRUST
## AND DESIGNATION OF PLAN TRUSTEE

5.1    **Establishment of Plan Trust**.  Within three (3) business days of the Confirmation Order becoming final ("**Plan Trustee Turnover Date**"), the Debtors shall (i) execute the Plan Trust Agreement, (ii) take all other steps necessary or appropriate to establish the Plan Trust, (iii) transfer, deliver and assign to the Plan Trust all of its right, title and interest in the Assets and the Actions.  For federal income tax purposes, the beneficiaries of the Plan Trust shall be treated as the grantors of the Plan Trust and deemed to be the owners of the assets of the Plan Trust, and the Debtors will treat the transfer of the assets of the Debtors to the Plan Trust as a deemed transfer to such beneficiaries followed by a deemed transfer by such beneficiaries to the Plan Trust.  The costs and expenses incurred by the Plan Trust on and after the Plan Trustee Turnover Date shall be paid in the ordinary course of business from the funds of the Plan Trust.  A proposed Plan Trust Agreement shall be filed and served on all creditors by RREF no later than fourteen (14) days prior to the initial date set by the Court to consider confirmation of this Plan.

5.2    **Purpose of Plan Trust**.  The Plan Trust, through the Plan Trustee, shall pursue any Actions that the Plan Trustee determines to be in good faith and in the best interest of creditors, make the distributions required by the Plan and otherwise effectuate the purposes of the Plan and the requirements of the Confirmation Order.

5.3    **Powers and Obligations of Plan Trust**.  In addition to all powers enumerated in the Plan Trust Agreement and in the provisions thereof, from and after the date upon which the Confirmation Order becomes final and non-appealable, the Plan Trust shall succeed to all of the

rights and interests of the Debtors necessary to effectuate the Plan. The Plan Trust shall have the authority, without further Bankruptcy Court approval, to sell the Assets, subject to higher and better offers, to pursue the Actions, to make distributions, to pay professional fees and expenses incurred by professionals retained by the Plan Trustee, subject to the procedures set forth herein, and to take such other reasonable actions as may be necessary to administer the purposes of the Plan Trust and to effectuate the Plan.

5.4   **Plan Trustee**.

(a)   Appointment.  RREF shall file and serve a notice of proposed Plan Trustee in advance of the Confirmation Hearing.

(b)   Service.  The Confirmation Order shall provide for the appointment of the Plan Trustee.  From and after the entry of the Confirmation Order, the Plan Trustee will continue to serve in accordance with the terms of the Plan Trust Agreement.  The Plan Trustee will retain all rights and powers conferred by the Plan Trust Agreement.  The Plan Trustee will possess such other and further rights and powers as detailed in this Plan and in the Plan Trust Agreement including, without limitation, those powers and rights conferred by the Plan Trust Agreement, and all rights and powers of a "representative of the estate" pursuant to Section 1123(b)(3)(A) and (B) of the Code, including the right and power in his reasonable discretion to:

(i)   invest the Plan Trust Assets (including, without limitation, cash in the reserves) in (A) direct obligations of the United States of America or obligations of any agency or instrumentality thereof which are guaranteed by the full faith and credit of the United States of America; (B) money market deposit accounts, checking accounts, savings accounts or certificates of deposit, or other time deposit accounts that are issued by a commercial bank or savings institution organized under the laws of the United States of America or any state thereof; or (C) any other investments that may be permissible under (I) the Bankruptcy Code or (II) any order of the Bankruptcy Court entered in this Bankruptcy Case;

(ii)   calculate and pay all distributions required or permitted to be made under the Plan, the Plan Trust Agreement and/or orders of the Bankruptcy Court;

(iii)   employ, supervise and compensate professionals (including, but not limited to, employment of the Plan Trustee's own law firm, if applicable) and other persons retained to represent the interests of and serve on behalf of the Plan Trust and waive any conflicts of interest as deemed necessary and appropriate in his discretion;

(iv)   make and file tax returns, if necessary, on behalf of the Plan Trust;

(v)   seek determination of tax liability under Section 505 of the Bankruptcy Code;

(vi)   investigate, commence, prosecute, settle, dismiss, abandon or otherwise dispose of any and all of the Actions; investigate, commence, prosecute settle, dismiss, abandon or otherwise dispose of any and all claims or interests filed in the Bankruptcy Case or scheduled by the Debtors, including, without limitation, any and all objections and adversary

proceedings seeking to reduce, disallow, subordinate, recharacterize or modify the priority of any claim or interest;

(vii)    perform any and all acts necessary or appropriate for the conservation and protection of the assets of the Plan Trust;

(viii)    exercise all powers and rights, and take all actions contemplated by or provided for in the Plan or Plan Trust Agreement;

(ix)    take any and all other actions necessary or appropriate to implement the Plan Trust;

(x)    exercise all powers and rights accorded by the Bankruptcy Code and the Bankruptcy Rules, including, but not limited to, Section 105 of the Bankruptcy Code and Rule 2004 of the Bankruptcy Rules, and all powers and rights accorded under Florida law; and

(xi)    accept the assignment of any third party claim or cause of action for prosecution in addition to or in conjunction with any of the Actions.

(c)    <u>Compensation</u>.  The Plan Trustee and any professionals he or she retains shall be compensated from the funds of the Plan Trust which shall be derived from the balance in DIP Account on the Effective Date and then from the proceeds of the St. Augustine Property Sale and the Kansas Property Sale.  After sufficient funds are in the Plan Trust Account, the Plan Trustee may pay 80% of the professional fees and 100% of the expenses reflected in each invoice unless RREF or the United States Trustee objects to any invoice within ten (10) days of its receipt thereof, in which case the Plan Trustee, or the professional retained by him, as the case may be, shall file a motion with the Court seeking allowance of the fees and costs objected to by RREF or the United States Trustee.  The Plan Trustee and all professionals retained by him or her, shall file fee applications with the Court no less frequently than every 180 days seeking approval of fees and expenses by the Court including amounts previously paid on a monthly basis.  The fee applications need not be in the format required by the Local Rules of the Court or United States Trustee's Guidelines in connection therewith, but shall be sufficiently detailed to identify the hours worked, the rates charged and the work performed.  Any successor Plan Trustee shall receive such reasonable compensation and reimbursement of expenses in the same manner for service as the Plan Trustee.  The Plan Trustee and his professionals shall be subject to disgorgement of fees and expenses previously paid to them if not approved by the Court upon the filing of fee applications.

(d)    <u>Indemnification</u>.    An indemnification of the Plan Trustee and the Administrator Professionals shall be as set forth in the Plan Trust Agreement.

(e)    <u>Insurance</u>.  The Plan Trustee shall be authorized to obtain all reasonably necessary insurance coverage for himself and the Administrator Professionals.

5.5    **Plan Trust Account**.  Within five (5) business days of the Plan Trustee Turnover Date, the Plan Trustee shall open the Plan Trust Account and deposit the balance in the DIP Account into the Plan Trust Account.  The Plan Trust Account shall be a segregated, interest-

bearing account that shall be utilized by the Plan Trustee to pay the fees and expenses of the Plan Trust (including, without limitation, compensation for the Plan Trustee and his professionals), U.S. Trustee quarterly fees if applicable, insurance expenses, if any, taxes, if any, other Post-Confirmation administrative expenses and distributions to unsecured creditors. The Plan Trustee shall provide monthly statements of the Plan Trust Account to RREF upon request by RREF.

5.6  **Resignation, Death or Removal of Plan Trustee**. The Plan Trustee may be removed by the Bankruptcy Court upon application by a party in interest upon appropriate notice and for good cause shown. In the event of the resignation, removal, death or incapacity of a Plan Trustee, counsel for RREF shall propose one or more successor Plan Trustees, and the Bankruptcy Court shall designate another person to become Plan Trustee and thereupon the successor Plan Trustee, without any further action, shall become fully vested with all of the rights, powers, duties and obligations of his or her predecessor.

5.7  **Disputed Claim Reserves**. In the event there are any Disputed Claims in a particular Class, and the Plan Trustee wishes to make a distribution to other holders of Allowed Claims in the same Class, the Plan Trustee shall establish a reserve for the Disputed Claims. All amounts reserved by the Plan Trustee for this purpose shall be maintained in the Plan Trust Account or the Plan Trustee may establish a separate Disputed Claim Reserve Account. The Plan Trustee shall be under no obligation to make any distribution to a particular Class at a time when there are any unresolved Disputed Claims in that Class.

5.8  **Timing of Distribution Under the Plan**. Payments and distributions in respect of Allowed Claims under the Plan shall be made as mandated under this Plan.

5.9  **Manner of Payments**. Any payments to be made by the Plan Trustee pursuant to the Plan shall be made by checks drawn on accounts maintained by the Plan Trustee or its professionals or by wire transfer, at the sole discretion of the Plan Trustee.

5.10  **Reliance on Documents**. The Plan Trustee may rely upon, and shall be protected in acting, or refraining from acting, upon any certificates, opinions, statements, instruments or reports believed by them to be genuine and to have been signed or presented by the proper person or persons.

5.11  **Requirement of Undertaking**. The Plan Trustee may request any court to require, and any court may in its discretion require, in any suit for the enforcement of any right or remedy under the Plan, or in any suit against the Plan Trustee for any action taken or omitted by the Plan Trustee, that the filing party litigant in such suit undertake to pay the costs of such suit, and such court may in its discretion assess reasonable costs, including reasonable attorneys' fees, against any party litigant in such suit, having due regard to the merits and good faith of the claims or defenses made by such party litigant.

5.12  **Removal of Plan Trustee**. The Court *sua sponte*, or the United States Trustee, or other party in interest, including RREF, by motion filed with the Court, upon appropriate notice, may seek to remove the Plan Trustee for cause, at any time including, without limitation, the Plan Trustee's violation of any provision of the Plan, or in the event that the Plan Trustee becomes incapable of acting as Plan Trustee as a result of physical or mental disability and such physical

or mental disability continues for a period in excess of sixty (60) days; provided, however, such removal will not be effective, unless otherwise ordered by the Court, until a successor Plan Trustee is appointed, and such appointment is accepted.

## ARTICLE VI

## MEANS FOR EXECUTION OF THE PLAN

6.1    **Transfer of Assets**.  No later than three (3) business days after the Confirmation Order becomes final and non-appealable Debtors shall liquidate the IRA and immediately turn over the net proceeds from such liquidation to RREF in partial satisfaction of the Allowed Secured Claim of RREF.

The principal means for execution of the Plan shall be the St. Augustine Property Sale and if necessary, the Kansas Property Sale, which shall be a sale free and clear of liens, encumbrances and interests purchaser pursuant to applicable provisions of 11 U.S.C. § 363.  The Sales shall take place as soon after the entry of the Confirmation Order as practicable, with the Kansas Property Sale to occur after the closing on the St. Augustine Property Sale.  In the event that the Sales do not result in sufficient proceeds to pay all Allowed Claims in full, plus interest, the Plan Trustee shall liquidate the remaining Assets and prosecute the Avoidance Actions.

Immediately upon entry of the Confirmation Order, the Debtors shall transfer the Assets and the Actions, together with all other property of the Debtors' Estate, if any, to the Plan Trust. The Plan Trustee shall thereafter administer the Plan Trust as provided herein.

The Plan Trustee will be responsible for facilitating the Sales, administering and liquidating all assets of the Debtors transferred to the Plan Trust, resolving any Disputed Claims, and making distributions to holders of Allowed Claims.

## ARTICLE VII

## CONFIRMATION ORDER AND VESTING OF PROPERTY

7.1    **Vesting of Property**.  Upon entry of the Confirmation Order, the Plan Trustee shall hold title to the Assets, the funds in the DIP Accounts, the Action, the Vacant Lots and any other property of the Debtors' Estate.

7.2    **Prior to the Effective Date**.  On or before the Effective Date, the following actions shall take place:

(i)    All payments to be made on or before the Effective Date by the Debtors shall be made or duly provided for;

(ii)    The Assets (not including the Stock and the proceeds from the Debtors' liquidation of the IRA as set forth in paragraph 4.2 above), shall have vested in the Plan Trustee, without the need for any further action on the part of the Debtors or the execution, delivery and filing or recording of any documents of conveyance, free and clear of all Liens,

Claims, and Equity Interests of Creditors and holders of Equity Interests except to the extent contemplated by the Plan.

                (iii)    The Confirmation Order shall require the Debtors and all other necessary parties, as the case may be, to take or cause to be taken, prior to the Effective Date, all such actions which are necessary to enable the Debtors to implement effectively the provisions of the Plan on a timely basis.  Moreover, the Confirmation Order shall empower, authorize and direct the Plan Trustee, as the case may be, to consummate the transactions contemplated by the Plan on or before the Effective Date.

                (iv)    The Confirmation Order shall be in form and substance consistent with the Plan and shall not have been reversed, stayed, modified or amended in any material respects prior to the Effective Date; and

                (v)    The Confirmation Order shall expressly approve the terms and provisions of the Plan under Section 1129 of the Code; provide for the Sales in accordance with the Bidding Procedures; provide for the rejection on the Effective Date of all executory contracts and leases; provide that the Assets sold at the Sales shall be sold free and clear of all liens, interests and encumbrances, except liens for unpaid real estate taxes, as provided herein; provide that the Assets **shall be sold without the need to pay any transfer and stamp taxes in accordance with Section 1146(a) of the Code**; provide for the treatment of the Liens and Claims of holders of Allowed Secured Claims and Liens as provided in the Plan; authorize and direct the Plan Trustee to perform his or her obligations under the Plan, and to take all actions and execute all documents and instruments reasonably necessary to consummate the transactions contemplated thereby in accordance with the terms thereof; provide that, upon the Effective Date, the Plan Trustee shall be vested with the rights and powers granted to a trustee under Section 1107(a) of the Code with respect to the allowance, treatment or avoidance of Liens or Claims to be assumed by the Plan Trustee, and which remain unresolved as of the Effective Date; provide that the Plan Trustee shall pay all Post-Confirmation United States Trustee quarterly fees; provide that the entry of the Confirmation Order shall not have any res judicata or other preclusive effect with respect to the Actions or to any other claims of the Plan Trustee against third parties that are not specifically and expressly released by the terms of the Plan or Confirmation Order, and that the entry of the Confirmation Order shall not be deemed a bar to asserting such claims.

       7.3    **Unclaimed Property**.  Unclaimed Property shall be redistributed in accordance with the distribution provisions of this Plan if, in the sole discretion of the Plan Trustee, the aggregate amount of such Unclaimed Property is sufficient to warrant such a distribution. Otherwise, Unclaimed Property shall be paid over to the Court or as otherwise directed by the Court ninety (90) days after the Final Distribution Date.

       7.4    **Further Authorization**.  The Plan Trustee shall be entitled to seek such Orders, judgments, injunctions and rulings as the Plan Trustee deems necessary to carry out and further the intentions and purposes, and to give full effect to the provisions of the Plan.

## ARTICLE VIII

## PROCEDURES FOR RESOLVING DISPUTED CLAIMS
## AND FOR SUBORDINATING CLAIMS

8.1     **Objections to Claims and Equity Interests**.  The Plan Trustee shall review all proofs of claim timely filed in the Bankruptcy Case, and all scheduled claims, and file objections to claims, or amendments to schedules, and/or actions to subordinate claims, with the Court no later than the later of (i) ninety (90) days after the Confirmation Date; or (ii) such other date as may be ordered by the Court, after notice and a hearing.

8.2     **Distribution**.  No Distribution shall be made with respect to any Disputed Claim unless and until a Final Order allowing the Disputed Claim as an Allowed Claim has been entered.  An allocable portion of funds shall be reserved on account of such Disputed Claim as provided herein, in the event the Plan Trustee seeks to make a distribution to the Class in which the holder of the Disputed Claim is a member prior to the resolution and allowance of the Disputed Claim.

8.3     **Distribution After Allowance**:  As soon as practicable after a Disputed Claim becomes an Allowed Claim, the holder of such Allowed Claim shall receive from its Disputed Claims Reserve, if one has been established, a distribution in an amount equal to the distribution that such holder would have received had such Disputed Claim been an Allowed Claim on the Effective Date.  Distributions to each holder of a Disputed Claim, to the extent that such Claim becomes an Allowed Claim, shall be made, without interest, in accordance with the Class of Claims to which such Claim belongs.

8.4     **Distribution After Disallowance**:  If and when a Disputed Claim or any portion thereof becomes a Disallowed Claim, the *pro rata* share of the distributions to which each holder of an Allowed Claim in the Class of Claims to which such Claim belongs is entitled, shall increase commensurately.  Accordingly, the Plan Trustee shall have the right to make subsequent distributions in accordance with the provisions of the Plan.

8.5     **Subordinated Claims and Equity Interests**.  Under this Plan, the Claim of an Allowed Unsecured Creditor may be subordinated pursuant to Section 510 of the Code to Claims of other Creditors or other applicable law to the Claims of holders of Class 6 General Unsecured Claims.  The Plan Trustee shall have the right to seek subordination of such Claims after the Effective Date.  The Court shall have the authority to enter any Order consistent with the Plan establishing the extent, priority and validity of such Subordinated Claims.

## ARTICLE IX

## CONDITIONS PRECEDENT TO EFFECTIVENESS OF PLAN

9.1     **Conditions to Effectiveness of Plan**:  The Effective Date of the Plan shall not occur unless and until the following conditions shall have been satisfied or waived by RREF, as determined in its sole discretion:  (a) 15 days shall have passed from the Confirmation Date (unless waived by the Court on request of RREF); (b) the Stock is delivered to RREF by the

Debtors; (c) the Bankruptcy Court shall have entered the Confirmation Order in form and substance acceptable to RREF; (d) the Bankruptcy Court shall have approved the information contained in the Disclosure Statement as adequate pursuant to Section 1125 of the Bankruptcy Code; (e) all documents instruments and agreements provided for under this Plan or necessary to implement this Plan shall have been executed and delivered by the parties thereto, unless such execution or delivery has been waived by the parties benefited thereby, in form and substance satisfactory to RREF (f) there is sufficient cash of the Debtors to pay all Allowed Administrative Claims required to be paid on the Effective Date; and (g) no order of a court restraining the Debtor from consummating the Plan shall have been entered and shall remain in effect.

9.2    **Notice of Confirmation of the Plan**:  Notice of entry of the Confirmation Order shall be provided as required by Bankruptcy Rule 3020(c)(2).

## ARTICLE X

## RETENTION OF JURISDICTION

10.1    The Court shall retain Post-Confirmation jurisdiction over this Bankruptcy Case for the following purposes:

(i)    To hear and determine any disputes arising under the Plan, including disputes which arise between the Plan Trustee or other parties.

(ii)    To adjudicate and confirm any and all issues relating to corporate governance of the Plan Trustee including, without limitation, resignation, removal and replacement of the Plan Trustee, and issues relating to the amount and necessity of any Post-Petition bonds.

(iii)    To adjudicate all claims or controversies arising out of any undertakings by the Debtors or the Plan Trustee during the pendency of this Bankruptcy Case.

(iv)    To adjudicate any and all claims filed by any Creditor or other parties in interest against the Debtors, the Debtors' professionals, the Plan Trustee, or its professionals, raised in connection with any and all claims or causes of action arising from or related to this Bankruptcy Case or this Plan.

(v)    To adjudicate all controversies and issues arising out of or relating to the various adversary proceedings discussed in the Plan, which remain open on the Court's docket as of the Confirmation, or which are commenced by the Plan Trustee after Confirmation pursuant to the provisions of the Code and this Plan.

(vi)    To recover all Estate Assets, except as otherwise provided elsewhere herein, whether title is presently held in the name of the Debtors or a third party.

(vii)    To make such Orders as are necessary or appropriate to carry out the provisions of the Plan.

(viii)    To make such other Orders or give such directions as may be appropriate under Section 1142 of the Code.

(ix)    To adjudicate all Claim and Equity Interest objections and subordination motions or complaints filed by the Plan Trustee, or other parties in interest in the Bankruptcy Case.

(x)    To consider and order any Post-Confirmation amendments to the Plan, as may be requested.

(xi)    To hear and determine all Claims arising from the rejection of executory contracts.

(xii)    To make all such Orders as are necessary or appropriate to carry out the provisions of the Plan.

(xiii)    To sell the Estate Assets pursuant to Section 363 of the Code, as provided herein.

(xiv)    To enforce all Orders previously entered by the Court, including without limitation, the Sale Orders.

(xv)    To hear and determine all fee applications of the Plan Trustee and other professionals.

(xvi)    To adjudicate any matters or controversies raised by the Debtors or Plan Trustee pursuant to Section 505 of the Code; and

(xvii)    To adjudicate the Actions.

## ARTICLE XI

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

11.1    **Executory Agreements**.    All executory contracts and unexpired leases will be deemed rejected as of the Effective Date.

11.2    **Proof of Claim for Rejected Agreements**.    Unless otherwise provided by Order of the Court entered before the Confirmation Date, any Claim arising from the rejection of an executory contract or unexpired lease pursuant to a Final Order must be filed with the Court within thirty (30) days after the entry of the Confirmation Order.

11.3    **Treatment Under Plan of Rejection Damages**.    Unless otherwise ordered by the Court, all Allowed Claims arising from the rejection of executory contracts or unexpired leases shall be treated as Class 6 General Unsecured Claims.

## ARTICLE XII

## LITIGATION CLAIMS

12.1   **Assignment of Rights**. The Plan Trustee shall succeed to the Debtors' right to pursue all of the Actions.  Notwithstanding the foregoing, to the extent that the conveyance or assignment of any such claims would preclude or impair the prosecution thereof by the Plan Trustee, then the Plan Trustee is intended to be, and shall be deemed to be, a "representative of the estate" approved to retain and enforce such claims as contemplated by 11 U.S.C. §§ 1123(b)(3)(A) and (3)(B).

12.2   **Actions**. The Plan Trustee shall have the sole right to pursue the Actions and any other causes of action of the Debtors including actions that are pending as of the Effective Date. The Plan Trustee shall succeed the Debtors in all pending actions in which a Final Order has not been entered, as well as all causes in action for which litigation has not yet been initiated.  The Plan Trustee shall be substituted, pursuant to this Plan, as the plaintiff in such actions.  The Plan Trustee shall file any and all Actions that are assigned to the Plan Trustee within 180 days of the Effective Date.

## ARTICLE XIII

## ACCEPTANCE OR REJECTION OF THE PLAN

13.1   **There are No Impaired Classes Entitled to Vote**.  There are no impaired classes and therefore no classes that are entitled to vote to accept or reject the Plan.

13.2   **Acceptance by a Class of Creditors**.  All Classes of Creditors are deemed to have accepted the Plan.

## ARTICLE XIV

## DISCHARGE, INJUNCTION AND LIMITS ON LIABILITY

14.1   Except as otherwise provided in the Plan or in the Confirmation Order, pursuant to 11 U.S.C. § 1141(d)(3), the confirmation of the Plan shall not discharge the Debtors since the Plan provides for the liquidation of all of the property of the Estate.

14.2   **All persons who have, held, hold, or may hold claims against the Debtors (including without limitation claims for indemnity and/or contribution) shall be permanently enjoined, on and after the Effective Date, subject to the occurrence of the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such claim against the Debtors, (ii) the enforcement, attachment, collection, or recovery by any manner or means of any judgment, award, decree or order against the Debtors on account of any such claim, (iii) creating, perfecting, or enforcing any encumbrance of any kind against the Debtors or against the property or interests in property of the Debtors on account of any such claim, (iv) asserting any rights of setoff, subordination, or recoupment of any kind against any obligation due**

from or against the Debtors or against the property or interest in property of or against the Debtors on account of any such claim, and (v) commencing or continuing in any manner, any action, or other proceeding of any kind with respect to claims and causes of action which are extinguished or released pursuant to the Plan. To the extent necessary to pursue claims against such parties, the Plan Trustee or any other party may name the Debtors as nominal defendants.

14.3    As of the Effective Date, and except as may otherwise be expressly provided in the Confirmation Order, all persons and entities shall be enjoined from asserting, directly or indirectly against RREF, or against any of RREF's agents, managers, servicers, contractors, attorneys, successors and assigns, any claim, cause of action or liability arising from or relating to any act, omission, representation, transaction or document, or other activity of any kind or nature, relating to the Debtors, their property or Atlantic Coast Bank's loan to the Debtors. In accordance with the foregoing, except as may be expressly provided in the Confirmation Order, the Confirmation Order will be a judicial determination of the discharge of all such claims, causes of action and liabilities.

Further, consistent with 11 U.S.C. §§ l123(b)(3)(A) and 1125(e), and applicable law, RREF and its agents, managers, servicers, contractors, attorneys, successors and assigns shall have no liability whatsoever to any person or other entity for any act taken or omitted to be taken in good faith in connection with or related to the formulation, preparation, dissemination, implementation, confirmation, or consummation of the RREF Plan, the Disclosure Statement, or any document or instrument created or distributed in connection therewith.

14.4    NOTWITHSTANDING ANY OTHER PROVISION OF THE PLAN, NO HOLDER OF A CLAIM OR OTHER PARTY IN INTEREST, AND NO SUCCESSORS OR ASSIGNS OF THE FOREGOING, SHALL HAVE ANY CLAIM, CAUSE OF ACTION, OR OTHER LEGAL OR EQUITABLE RIGHT AGAINST THE DEBTORS, THE PROFESSIONALS RETAINED IN THE BANKRUPTCY CASE AND/OR ANY OF SUCH PARTIES' RESPECTIVE CURRENT ATTORNEYS, REPRESENTATIVES, FINANCIAL ADVISORS OR AGENTS AND ANY OF SUCH PARTIES' SUCCESSORS AND ASSIGNS, FOR ANY ACT OR OMISSION FROM THE PETITION DATE THROUGH THE EFFECTIVE DATE IN CONNECTION WITH, RELATING TO, OR ARISING OUT OF THE BANKRUPTCY CASE, THE PURSUIT OF CONFIRMATION OF THE PLAN, THE CONSUMMATION OF THE PLAN, THE ADMINISTRATION OF THE PLAN OR THE PROPERTY TO BE DISTRIBUTED UNDER THE PLAN, EXCEPT FOR THEIR WILLFUL MISCONDUCT, GROSS NEGLIGENCE OR KNOWING FAILURE TO COMPLY WITH BANKRUPTCY LAW OR RULES. PROVIDED THAT THEY ACT IN GOOD FAITH, IN ALL SUCH INSTANCES, THE ABOVE-REFERENCED PARTIES SHALL BE AND HAVE BEEN ENTITLED TO REASONABLY RELY ON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES IN CONNECTION WITH THE BANKRUPTCY CASE AND UNDER THE PLAN.

**ARTICLE XV**

**MISCELLANEOUS PROVISIONS**

15.1   **Binding Effect of the Plan**.   The provisions of the Plan shall be binding upon and inure to the benefit of the Debtor, the Debtors' Estate, the Creditors, the Plan Trustee, and their respective predecessors, successors, assigns and agents.

15.2   **Amendments/Modification of Plan**.   RREF may propose amendments or modifications of the Plan any time prior to Confirmation, with leave of the Court upon notice to appropriate parties.   After Confirmation, the Plan Trustee may, with approval of the Court, and in consultation with RREF, and so long as it does not materially or adversely affect the interests of Creditors, amend the Plan to remedy any defect or omission or to reconcile any inconsistencies in the Plan or the Confirmation Order in such manner as may be necessary to carry out the purposes and effect of the Plan.

15.3   **Discharge**.   The entry of the Confirmation Order acts as a discharge of any and all liabilities of the Debtors that are dischargeable under Section 1141 of the Code, other than the debts or obligations which are expressly created in the Plan.

15.4   **Governing Law**.   Except as mandated by the Code or Rules as applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with the laws of the State of Florida.

15.5   **Venue of Proceedings against Professionals**.   Should any Creditor or other party in interest file an action against the Debtor, the Debtors' professionals, the Plan Trustee, or their respective professionals, in connection with any claims or causes of action arising from or related to this Bankruptcy Case, or this Plan, venue of any such action shall lie only in the United States Bankruptcy Court for the Middle District of Florida.

15.6   **Headings**.   The headings of articles, paragraphs, subparagraphs of the Plan are inserted for convenience only and shall not affect the interpretation of any provision of the Plan.

15.7   **Successors and Assigns**.   The Plan and all provisions hereof shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

15.8   **Time**.   In computing any time periods described or allowed by the Plan, the day of the act or event from which the designated period begins to run shall not be included.   The last day of the period so computed shall be included, unless it is a Saturday, Sunday or a legal holiday, in which event, the period will run until the next succeeding day which is not one of those aforementioned days.

15.9   **Severability**.   Should any provision of the Plan be determined to be unenforceable after the Effective Date such determination shall in no way limit or effect the enforceability and operative effect of any and all of the other provisions of the Plan.

15.10   **Revocation**.  RREF reserves the right to revoke, and withdraw the Plan prior to Confirmation.  If RREF revokes or withdraw the Plan, then the Plan shall be deemed null and void and nothing contained herein shall be deemed to constitute a waiver or release of any claims by or against the Debtors, or any other person or entity or to prejudice in any manner the rights of such parties in any further proceedings involving the Debtors.

15.11   **Plan Controls**.  In the event, and to the extent that any provision of the Plan is inconsistent with the provisions of the Disclosure Statement, or any other agreement or instrument required or contemplated to be executed by the Plan Trustee, the provisions of the Plan shall control and take precedence.  In the event of any inconsistency between any provision of the Plan and any provision of the Confirmation Order, the Confirmation Order shall control and take precedence.

15.12   **Post-Confirmation United States Trustee Fees**.  Notwithstanding any other provisions of the Plan to the contrary, the Debtors shall pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6), within ten (10) days of the entry of the Order confirming this Plan, for pre-confirmation periods and simultaneously provide to the United States Trustee an appropriate affidavit indicating the cash disbursements for the relevant period.  The Plan Trustee shall pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6) for post-confirmation periods within the time period set forth in 28 U.S.C. § 1930(a)(6), based upon all post-confirmation disbursements made by the Plan Trustee, until the earlier of the closing of this Bankruptcy Case by the issuance of a Final Decree by the Court, or upon the entry of an Order by the Court dismissing this Bankruptcy Case or converting this Bankruptcy Case to another chapter under the Code, and the Plan Trustee shall provide to the United States Trustee upon the payment of each post-confirmation payment an appropriate affidavit indicating all the cash disbursements for the relevant period.

15.13   **Section 1125(e) of the Code**.  As of the Confirmation Date, RREF shall be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Code.

15.14   **Time**.  In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein or determined by the Court, the provisions of Rule 9006 shall apply.

15.15   **Final Decree**.  Once there has been substantial consummation of the Plan, the Plan Trustee shall file a motion with the Court to obtain a final decree to close the Bankruptcy Case.

15.16   **Savings Clause**.  Any minor defect or inconsistency in the Plan may be corrected or amended by the Confirmation Order.

15.17   **Remedy of Defects**.  After the Effective Date, the Plan Trustee may, with approval of the Court, and in consultation with RREF, and so long as it does not materially and adversely affect the interests of Creditors, remedy any defect or omission or reconcile any inconsistencies in the Plan or in the Confirmation Order in such manner as may be necessary to carry out the purposes and effect of the Plan and in form and substance satisfactory to the Plan Trustee.

**ARTICLE XVI**

**PROVISION TO INVOKE CRAMDOWN IF NECESSARY**

16.1    Since all classes of Claims that are entitled to vote on the Plan are not impaired and shall therefore be deemed to have automatically accepted the Plan, there is no need for RREF to seek confirmation under the cram down provisions of the Code

**ARTICLE XVII**

**TAX CONSEQUENCES**

17.1    RREF has not obtained a tax opinion and expresses no opinion as to the tax consequences to the holder of any claim or interest caused by the terms of the Plan.  Creditors are advised and encouraged to obtain their own tax counsel to determine the tax consequences of this Plan.

17.2    BECAUSE RREF EXPRESSES NO TAX ADVICE, IN NO EVENT WILL IT OR ITS PROFESSIONAL ADVISORS BE LIABLE FOR THE TAX CONSEQUENCES TO ANY CLAIMANT OF THE PLAN.  CREDITORS MUST LOOK SOLELY TO AND RELY SOLELY UPON THEIR OWN ADVISORS AS TO THE TAX CONSEQUENCES OF THIS PLAN TO ANY CLAIMANT.

17.3    Additional information concerning potential tax consequences of the Plan is included in the Disclosure Statement.

**ARTICLE XVIII**

**REQUEST FOR CONFIRMATION**

RREF as the Proponent of the Plan, pursuant to 11 U.S.C. §1129(b), hereby requests confirmation of this Plan.

## ARTICLE XIX

## RECOMMENDATION AND CONCLUSION

RREF believes that confirmation and consummation of this Plan is preferable to all other alternatives.  RREF's reasons for recommending the Plan are set forth in the Disclosure Statement.

This Chapter 11 Plan is dated this 18th day of September, 2014.

Respectfully Submitted,

**JONES WALKER LLP**
*Counsel for RREF II ACB Acquisitions, LLC*
201 S. Biscayne Blvd., Suite 2600
Miami, Florida 33131
Phone:  (305) 679-5700
Facsimile:  (305) 679-5710

By:    */s/ Mark S. Roher*
Stephen P. Drobny, Esq.
Florida Bar No. 55732
sdrobny@joneswalker.com
Mark S. Roher, Esq.
Florida Bar No. 178098
mroher@joneswalker.com

[RREF II ACB Acquisitions, LLC's signature appears on following page]

**RREF II ACB Acquisitions, LLC**

By:    Rialto Capital Advisors, LLC, its
attorney-in-fact

By: _____

Name: _____ JONATHAN LEVY

Title: _____ AUTHORIZED SIGNATORY